UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS LEON, CDCR #AM-4998, <br><br> Plaintiff, <br><br> vs. <br><br> ALVARO CELAYA and JAMES MARTINSON, <br><br> Defendants. | Case No.: 3:20-cv-0899-AJB-BGS <br><br> **ORDER:** <br><br> **1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]; AND** <br><br> **2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Plaintiff, Carlos Leon, currently incarcerated at Substance Abuse Treatment Facility ("SATF") in Corcoran, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1 at 1. Plaintiff alleges two correctional officers violated his Eighth Amendment and First Amendment rights while he was incarcerated at Centinela State Prison ("CEN") in Imperial County, California in January 2019. He seeks $500,000 in general and punitive damages. *Id.* at 7. Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a) but has filed a Motion to Proceed In Forma Pauperis ("IFP") under 28 U.S.C. § 1915(a) (ECF No. 2).

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

1    In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate
2    Statement Report as well as a Prison Certificate completed by a trust account official at
3    SATF. *See* ECF No. 2 at 4, 6–8; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*,
4    398 F.3d at 1119. These documents show Plaintiff had no available balance at the time of
5    filing. *See* ECF No. 2 at 3–5.
6    Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP
7    (ECF No. 2) and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1).
8    *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited
9    from bringing a civil action or appealing a civil action or criminal judgment for the
10   reason that the prisoner has no assets and no means by which to pay the initial partial
11   filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C.
12   § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based
13   solely on a "failure to pay . . . due to the lack of funds available to him when payment is
14   ordered."). The Court will direct the remaining balance of the $350 total fee owed in this
15   case be collected by the agency having custody of the prisoner and forwarded to the
16   Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

17   **II.    Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

18       A.    Standard of Review

19   Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-
20   answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these
21   statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of
22   it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants
23   who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)
24   (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.
25   2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that
26   the targets of frivolous or malicious suits need not bear the expense of responding.'"
27   *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).
28   / / /

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

In deciding whether to dismiss the complaint for failing to state a claim, the court is generally bound by the facts and allegations contained within the four corners of the complaint. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007). But, if the plaintiff has supplemented the complaint by attaching documents, the court may consider these documents as part of the complaint when determining whether the plaintiff can prove the allegations asserted in the complaint. *During v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, while a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases,

to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

   B. <u>Plaintiff's Allegations</u>

  Plaintiff contends his Eighth Amendment rights were violated when correctional officers used excessive force in handcuffing him while conducting a cell search. *See* Compl., ECF No. 1 at 2. He argues the excessive force was in retaliation for grievances he filed concerning abusive and unethical conduct by some correctional staff and in violation of his First Amendment rights. *Id.* Plaintiff names two Centinela State Prison correctional officers as defendants, Alvaro Celaya and James Martinson. *Id.*

  Specifically, Plaintiff alleges that on January 9, 2019, Correctional Officer Celaya used excessive force when he "decided to over tighten" the handcuffs he placed on Plaintiff in during a search of Plaintiff's cell. *Id.* at 3. Plaintiff contends that when "Celaya was made aware of the cuffs being too tight, Celaya ignored his complaints, stating 'My cuff key is broken.'" *Id.* Plaintiff argues Celaya left the cuffs on him "for hours until [the] mass search concluded." *Id.* Plaintiff alleges Celaya's actions were in retaliation for Plaintiff's filing grievances and part of a "campaign [of] harassment" against him. *Id.* He contends Celaya "lacked [a] good faith effort to maintain or restore discipline but instead was used for punitive purposes for filing grievances." He claims Celaya has a "philosophy of psychological and physical abuse to rehabilitate the incarcerated." *Id.*

  Moreover, Plaintiff alleges Sergeant Martinson, Celaya's alleged supervisor, "allowed his subordinate, Officer Celaya, under his direct supervision to use excessive force while Plaintiff was cuffed." *Id.* at 4. Plaintiff claims that on January 9, 2019, after

Celaya placed him in handcuffs, Plaintiff complained to Martinson that the handcuffs were too tight. *Id.* Martinson allegedly responded, stating, "[T]his is prison and I left my padded [cuffs] at home." *Id.* After a few more minutes in the handcuffs, Plaintiff contends he began to have "tingling sensations with discoloration" in his hands. Plaintiff claims he again complained to Martinson about the handcuffs but Martinson refused to assist him and purportedly responded: "You'll live, you're a big boy." *Id.* at 4.

Plaintiff alleges Celaya and Martinson's actions were in retaliation for his having filed grievances regarding mistreatment by prison staff. He attaches to his Complaint several grievances submitted in the weeks leading up to the January 9, 2019 incident. Plaintiff's exhibits indicate he complained specifically of prior misconduct by Officer Celaya on November 8, 2018 and December 21, 2018, just weeks before the alleged incident. *Id.* at 14–15, 18.

Plaintiff also contends that as a result Celaya and Martinson's actions, he "endured wrist injuries for well over a year." *Id.* at 4. Plaintiff claims injuries caused by the handcuffs have required him to "resort[] to doctor visits, and cortisone injections." *Id.* at 3. He seeks compensatory and punitive damages. *Id.* at 7.

Based on these allegations, the Court finds Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state Eighth Amendment excessive force and First Amendment retaliation claims for relief that are "plausible on [their] face," *Iqbal*, 556 U.S. at 678, and, therefore, it is sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *see also Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (stating that when correctional officers are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *see Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (holding that an officer's refusal to remove tight handcuffs from a prisoner's wrists may constitute excessive force when the prisoner's repeated pleas to loosen the cuffs

were ignored and the cuffs caused severe pain or lasting injury to the prisoner); *Alexander v. Cnty. of L.A.*, 64 F.3d 1315, 1322–24 (9th Cir. 1995) (finding the plaintiff stated a claim for excessive force when officers disregarded repeated requests to loosen handcuffs); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (concluding plaintiff's allegation officers refused to loosen tight handcuffs upon request was fact-specific and likely to turn on the credibility of the witnesses); *Smith v. City of Hemet*, 394 F.3d 689, 700–01 (9th Cir. 2005) (concluding that whether the handcuffs were actually too tight, and whether the officers checked the handcuffs to ensure that they were not too tight, are disputed factual issues); *Gregory v. Adams*, Civil No. 05-cv-1393-FCD-EFB, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring the plaintiff's repeated complaints of pain and refusing to loosen cuffs for over five hours), accepted by 2008 WL 780672 (E.D. Cal. Mar. 21, 2008); *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.")

      Therefore, the Court will direct the U.S. Marshal to effect service of summons and Plaintiff's Complaint on his behalf.[2] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or

///

---

[2] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III. Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $ 10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and to forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with certified copies of this Order, his Complaint, and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: July 28, 2020

Hon. Anthony J. Battaglia
United States District Judge